UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEBORAH JOHNSON, a single person; SHELBY JOHNSON-ROWELL, a single person; and FALLON PETTIJOHN and BENJAMIN PETTIJOHN, a marital community,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY d/b/a ALLSTATE INSURANCE COMPANY, a foreign corporation,<br><br>Defendants. | CASE NO. C 14-5064 KLS<br><br>ORDER REGARDING DISCOVERY OF CLAIMS FILE |

This matter comes before the Court on the Plaintiffs' Motion to Compel Production of Unredacted Claim File (Dkt. 27) and the Defendants' Motion for Protective Order Re: Attorney Client Privilege and Work-Product Privilege. Dkt. 25. These motions revolve around a discovery dispute regarding the Defendants' claim file. The parties agreed that they would each file a brief in support of their respective positions, with no responsive briefs allowed, and that

1   Allstate would submit its privilege log with attached withheld documents for an *in camera*

2   review by this Court.  These documents were provided to the Court but not filed.  In addition, the

3   Defendants provided the Court with a first supplemental privilege log and attached withheld

4   documents by letter dated July 7, 2014.

## BACKGROUND

6   This lawsuit rises from a fire at Plaintiff Debbie Johnson's home in Graham, Washington

7   on January 20, 2013.  The fire was investigated by the Pierce County Fire Prevention Bureau.

8   The report (of unknown date) from the Bureau noted that "the cause and origin of the fire

9   remains undetermined, subject to further investigation.  Based upon the evidence at the fire

10  scene, the most probable fire origin and cause is a hand held ignition device introduced to the

11  loveseat and recliner."  Dkt. 26-3, p. 5.[1]

12  Ms. Johnson reported the claim to Allstate, her insurer for the home and its contents.

13  Allstate hired a fire cause and origin expert, Douglas Barovsky of MDE, to inspect the home.  He

14  issued a report on March 19, 2013 in which he concluded that the "[f]ire patterns indicate two

15  areas of origin for this fire" and that the "source of ignition for this fire has not been determined

16  at this time. … The direct application of an open flame has not been ruled out at this time."  Mr.

17  Barovsky classified the fire as "undetermined per NFPA 921 guidelines.  A natural cause has

18  been considered and ruled out.  An accidental or incendiary (intentional) cause has not been

19  ruled out at this time."  He concluded by stating that his opinions "are subject to change with

20  receipt of additional information or evidence."

21  Ms. Johnson retained Bud Dyer of Cascade Public Adjusters on February 6, 2013 with

22  regard to ALE and the structure portion of the insurance claim.  In a letter to Allstate adjuster

---

[1] The Court notes that Exhibit C, which contains the report from the Pierce County Fire Prevention Bureau is, on the whole, illegible.

Ann Lewis dated May 13, 2013, Mr. Dyer commented on the length of time it was taking for Allstate to conclude its investigation. He also suggested that their actions were "consistent with the definition of bad faith." Dkt. 26-5, p. 3. Allstate asserts that this was a "threat of litigation" and for that reason it retained Mr. Leid as counsel.

By email dated May 17, 2013, Allstate claims handler Ann Lewis instructed Ms. Johnson's public adjuster, Bud Dyer, to "from this date forward, please contact Mr. Leid in regards to the claim investigation and do not contact me directly via e-mail, letter or phone." Dkt. 28, p. 4. From that point on, Mr. Leid served as Allstate's sole point of contact for Plaintiffs. Mr. Leid is currently counsel for the Defendants in this litigation.

It is undisputed that Mr. Leid requested, scheduled, and personally conducted the Examinations Under Oath (EUO) of all four plaintiffs; that he requested a variety of documents and other information from Plaintiffs; he corresponded with Plaintiffs' counsel and Ms. Johnson's public adjuster regarding a variety of claim handling issues, including negotiation of Additional Living Expense (ALE) payments and Plaintiffs' withdrawal of certain claims. All of these activities are claims adjusting activities. *See* Dkt. 29-1, pgs. 2 – 33.

It appears that on August 29, 2013 Mr. Leid called Mr. Barovsky inquiring whether Mr. Barovsky could classify the fire as incendiary. Dkt. 29-3. Mr. Barovsky did change his opinion in a report dated August 30, 2013. In that report he noted that "MDE was contacted by Allstate's staff counsel and asked if a review of the file notes and report would lead to a supplemental report containing more definitive conclusions. MDE has reviewed its file and previous report and offers the following for your consideration. … MDE's review has resulted in a more specific fire cause than in the previously published report/opinions. Most notably, MDE has determined that the fire should be classified as incendiary (intentional)." Dkt. 17-1, p. 31.

Case 3:14-cv-05064-KLS   Document 41   Filed 08/29/14   Page 4 of 17

1. On September 3, 2013 Mr. Lied sent a letter to Plaintiffs' counsel stating that Allstate had concluded its investigation and was denying coverage. Dkt. 17-1, p. 32-35. Coverage was denied based on alleged arson by Ms. Johnson and alleged misrepresentations by Plaintiffs during their Examinations Under Oath.

In a letter (also sent through email) dated November 7, 2013 (Dkt. 26-7, pgs. 2 – 4) Kasey Huebner, current counsel for the Plaintiffs, advised Mr. Leid that his clients were going to file an Insurance Fair Conduct Act (IFCA) notice and initiate litigation against Allstate. The IFCA was filed with the Office of the Insurance Commissioner by Mr. Huebner via a letter dated December 10, 2013. Dkt. 26-8. The Plaintiffs filed their lawsuit in Pierce County Superior Court on January 14, 2014 and the Defendants removed the case to federal court on January 22, 2014. In their Complaint, the Plaintiffs allege breach of contract, bad faith, violation of the Insurance Fair Conduct Act and violation of the Consumer Protection Act.

**DISPUTED DOCUMENTS**

The Plaintiffs are seeking, through discovery, Allstate's entire unredacted claims file. In response to the discovery request, the Defendants prepared Defendant's Privilege Log (Dkt. 29-5) and also recently provided this Court with a First Supplemental Privilege Log. The Defendants assert the documents are not discoverable because of the attorney-client privilege and work-product protections.

**DISCUSSION**

**A. Attorney-Client Privilege and Work Product Doctrine**

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law. ... Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Company v. United States,* 449

1 U.S. 383, 389, 101 S. Ct. 677, 682 (1981).  As noted, this privilege covers attorney-client

2 communications and is codified in R.C.W. 5.60.060(2) as follows:

3       An attorney or counselor shall not, without the consent of his client,
      be examined as to any communication made by the client to him,
4       or his advice given thereon in the course of professional employment.

5 It is undisputed that the attorney-client privilege is governed by substantive state law.

6       The work-product doctrine shelters the mental processes of attorneys and is a procedural

7 immunity governed by the Federal Rules of Civil Procedure, specifically Rule 26(b)(3).

8 *Lexington Ins. Co.,* 240 F.R.D. at 666; *Tubar v. Clift,* No. C05-1154JCC, 2007 WL 30872, at 83

9 (W.D. Wash. Jan. 4, 2007).  The doctrine is a court-created doctrine, first announced by the

10 Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 U.S. Ct. 385, 91 L. Ed. 451 (1947).  The

11 doctrine serves as a limitation on pretrial discovery and is not an evidentiary privilege.  *United

12 States v. Nobles,*422 U.S. 225, 246, 95 S.Ct. 2160, 45L. Ed.2d 141 (1975).   Rather, the work

13 product doctrine is a qualified immunity protecting from discovery documents and tangible

14 things prepared by a party or his representative in anticipation of litigation. *Admiralty Ins. Co. v.

15 U.s. Dist. Court for dist. Ariz.,* 881 F.2d 1486, 1494 (9th Cir. 1989).

16       As noted by Judge Robart, *"Cedell* is thus inapplicable when an insurer withholds

17 documents under the work product doctrine in federal court.  Instead, the court analyzes any

18 assertion of protection under the work product doctrine under Federal Rule of Civil Procedure

19 26(b)(3) and applicable federal case law.  *See Stewart Title Guar. Co.,* 2013 WL 1385264 at873,

20 86; *Hilborn,* 2013 WL 6055215 at *3-*4." *MKB Constructors v. American Zurich Insurance

21 Company,* 2014 WL 2526901 at *8.  Thus if under *Cedell* documents are discoverable, they  may

22 still be properly withheld if Allstate meets its burden for asserting protection under the work

23 product doctrine under Fed. R. Civ. P. 26(b)(3).

24 //

ORDER REGARDING DISCOVERY    - 5

**B. *Cedell v. Farmers Ins. Co. of Washington* and Attorney-Client Privilege**

*Cedell v. Farmers Ins. Co. of Washington*, 176 Wash. 2d 686, 295 P.3d 239 (2013) addresses the scope and application of the attorney-client privilege in a claim for insurance bad faith.

> A first party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured. (citations omitted). The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith. Implicit in an insurance company's hand[l]ing of [a] claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or employed by insurers would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices.

*Id.*, at p. 696-697. The Washington State Supreme Court noted that "bad faith claims by insureds against their own insurer are unique and founded upon two important public policy pillars: that an insurance company has a quasi-fiduciary duty to its insured and that insurance contracts, practices, and procedures are highly regulated and of substantial public interest. (citations omitted)" *Id.,* at p. 698.

*Cedell* established a framework for the Courts to follow to determine whether the attorney-client privilege applies in a bad faith case.

First, "[w]e start from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant." *Id.,* at p. 698 – 699. The insurer may overcome this "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id.,* at p. 699.

In this case, the Plaintiffs have clearly shown that the attorney for Allstate was involved in the "quasi-fiduciary tasks of investigating and evaluating or processing the claim" and Allstate has presented no evidence to the contrary.  The Court concludes that counsel was engaged in the quasi-fiduciary tasks of investigating, evaluating and processing the Plaintiffs' claims and that the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process applies.

As noted in *Cedell,* Allstate can overcome the presumption of discoverability by showing that its attorney was "providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id.* at p. 699.  If that is the case, Allstate is entitled to "the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." *Id.* at p. 699.   If the insurer makes such a showing, the attorney-client privilege may still be deemed waived if the Court finds, following the procedure set forth in *Cedell*, that the insured has made the appropriate showing for the applicability of the bad faith civil fraud exception. *Id.* at p. 700.

**C. Constitutionality of *Cedell*.**

Allstate argues that *Cedell* is unconstitutional and in violation of Article I, Section 12 of the Washington State Constitution, which provides as follows:

> SPECIAL PRIVILEGES AND IMMUNITIES PROHIBITED.
> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

As noted by Allstate in its Motion, the Supreme Court issued a decision – it did not pass a law. The decision in *Cedell* is not in violation of Article I, Section 12 of the Washington State Constitution.  Even if the decision were construed to involve the passage of a law, this portion of

1  the Washington State Constitution is concerned with the award of special privileges rather than

2  the denial of equal protection. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake,* 150

3  Wn.2d 791, 810, 83 P.3d 419 (2004). The decision in *Cedell* does not award special privileges

4  and does not violate the State Constitution.

5       Allstate also argues that the decision in *Cedell* violates the United States Constitution

6  Privileges and Immunities Clause. As pointed out by Plaintiffs, Article IV, § 2, cl. 1 of the

7  United States Constitution, the Privileges and Immunities Clause, does not apply to corporations.

8  *Norfolk & W.R. Co. v. Pennsylvania,* 136 U.S. 114, 118 (1890); *Gulch Gaming, Inc. v. South*

9  *Dakota,* 781 F.Supp. 621, 632 (D. S.D. 2014)/ *Dairy v. Bonham,* 2013 U.S. Dist. LEXIS 103033

10 (N.D.C.A. 2013). The Supreme Court decision in *Cedell* does not violate the United States

11 Constitution.

12 **D.  Work Product Doctrine**

13      Federal law governs the court's inquiry as to whether the work product doctrine applies.

14 *MKB Constructors v. American Zurich Insurance Company,* 2014 WL 2526901, at *8. Rule

15 26(b)(3) provides, in pertinent part:

16      **(3)  Trial Preparation:  Materials.**

17      **(A)** Documents and Tangible Things. Ordinarily, a party may not
        discover documents and tangible things that are prepared in
18      anticipation of litigation or for trial by or for another party or its
        representative (including the other party's attorney, consultant,
19      surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4),
        those materials may be discovered if:
20
            **(i)** they are otherwise discoverable under Rule 26(b)(1); and
21
            **(ii)** the party shows that it has substantial need for the materials
22          to prepare its case and cannot, without undue hardship, obtain
            their substantial equivalent by other means.
23

24

In this regard, Allstate takes the position that following the occurrence of a certain event the "claims adjusting process" ended because the event made it clear that "attorney advice and participation is required" and therefore documents created after that date were made in anticipation of litigation or for purposes of trial.

Allstate suggests various dates after which they assert that the work product doctrine applies. The earliest date they assert is May 13, 2013 when the Plaintiffs' public adjuster accused Allstate of bad faith. The second date is November 7, 2013 when Plaintiffs' counsel advised he was preparing IFCA documentation and planned to "initiate suit against Allstate." Dkt. 26-7, p.4. The third date is December 10, 2013 when Plaintiffs' counsel served the IFCA notice on Allstate. The last date is January 9, 2014 when this lawsuit was initially filed in Pierce County Superior Court. Dkt. 25, p. 2.

The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparation for litigation." *Admiralty Ins. Co. v. U.S. Dist. Court for Dist. Ariz.,* 881 F.2d 1486, 1494 (9th Cir. 1989).

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles,* 422 U.S. 225, 238-39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

In order to qualify for the work product protection, "documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.' " *In re California Pub. Utils. Comm'n,* 892 F.2d 778, 780 – 81 (9th Cir. 1989).

1    This requires the party asserting the privilege to demonstrate that the threat of litigation
2 was impending.  When this issue comes before the court, it necessarily requires a case-by-case
3 inquiry.  *Garcia v. City of El Centro,* 214 F.R.D. 5877, 592-93 (S.D.C.A. 2003).  "Courts have
4 observed that the application of the work product doctrine to documents prepared by insurance
5 companies during claims investigations is difficult because the nature of the insurance business
6 is such that an insurance company must investigate a claim prior to determining whether to pay
7 its insured, and thus pre-litigation investigation is the routine business of insurance companies."
8 *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 197 F.R.D. 620, 635 (N.D.
9 Iowa 2000) (internal quotations omitted).

10    "[A] document should be deemed prepared 'in anticipation of litigation' and thus eligible
11 for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the
12 factual situation in the particular case, the document can be fairly said to have been prepared or
13 obtained because of the prospect of litigation.' " *In re Grand Jury Subpoena (Mark Topf)*, 357
14 F.3d 900, 907 (9th Cir. 2004).

15    However, "[i]n circumstances where a document serves a dual purpose, that is, where it
16 was not prepared exclusively for litigation, then the 'because of" test is used. *United States v.*
17 *Richey,* 632 F.3d 559, 568 (9th Cir. 2011).  Dual purpose documents are deemed prepared
18 because of litigation if "in light of the nature of the document and the factual situation in the
19 particular case, the document can be fairly said to have been prepared or obtained because of the
20 prospect of litigation." *Id.* at p. 567-68.  "The 'because of' standard does not consider whether
21 litigation was a primary or secondary motive behind the creation of a document.  Rather, it
22 considers the totality of the circumstances and affords protection when it can fairly be said that
23 the 'document was created because of anticipated litigation and would not have been created in
24

substantially similar form but for the prospect of that litigation[.]' (citation omitted)." *In re Grand Jury Subpoena (Mark Topf), supra,* at p. 908.

**E.  *In Camera* Review**

As noted, the parties agreed to this Court conducting an *in camera* review of the documents either withheld or redacted by Allstate.  Having conducted the review, and considering the applicable law, the Court **ORDERS** as follows:

**DOCUMENTS WITHHELD**

**Bates 126 – 129.**  This document shall be produced.  This log indicates that this is correspondence from defense counsel to Allstate.  In light of counsel's involvement in the claims process, this letter was generated as part of that process and is not protected by attorney-client per *Cedell*.  Further, this was not made in anticipation of litigation as there was no impending litigation at the time this letter was prepared.

**Bates 138, 153 – 154, 159, 160.**  These documents are discoverable under *Cedell* as they are part of the claims process and shall be produced.

**Bates 924 – 937.**  This document is identified as correspondence that contains legal opinions and strategy.  However, this document was generated as part of the claims adjusting process and any opinion or strategy relate to that process as well as investigation of the claim.  This document shall be produced.

**Bates 947, 948, 972 – 73.**  These documents shall be produced.  They are all part of the claims process under *Cedell* and not work product.

**Bates 1129 – 1134.**  These documents are identified as referral documents to counsel who was selected to investigate the claim.  These are all part of the claims process and shall be produced.

**Bates 1140 – 1211.**  These various documents are identified as claim file notes.  Documents with Bates 1140 – 1154; 1159 – 1211 shall be produced.  These documents relate to the claims

1  adjusting process and are discoverable under *Cedell*, are part of the ordinary course of work in a
2  claims adjustment process and would have been prepared whether or not a claim was
3  subsequently filed and are not protected under the work product doctrine.
4  **Bates 1155**, the entry for 12/31/2013 at 7:17 PM Central may be redacted.  This involves
5  attorney-client privilege as well as work product as Defendant knew that litigation was
6  impending.  The balance of this page will be produced.
7  **Bates 1156**, the entry for 12/5/2013 at 5:26 PM Central may be redacted.  This involves
8  attorney-client privilege as well as work product as Defendant knew that litigation was
9  impending.  The balance of this page will be produced.
10 **Bates 1157 – 1158,** the entry starting at the bottom of Bates 1157 with the date of 11/7/2013 and
11 going to the top of Bates 1158 showing the time of 5:01 PM Central may be redacted.  This
12 involves attorney-client privilege as well as work product as Defendant know that litigation was
13 impending.  The balance of the two pages will be produced.
14 **Bates 1212.**  It is unclear if this document was not produced or if it was produced in a redacted
15 form.  While this entry relates to retention of counsel, it was for purposes of investigation and the
16 unredacted document shall be produced.
17 **Bates 1585.**  This document may be withheld.  It is dated January 29, 2014 and is work product.
18 **Bates 1652.**  This is an email string.  The top half of the page is between counsel and the
19 Defendant when litigation was impending and is covered not only by attorney-client but also
20 work product.  The top half of the page shall be redacted.  The bottom half of the document
21 however is not covered by either attorney-client or work product and shall be produced.  It is an
22 email from Kendra Brown to Rory Leid dated Thursday, November 07, 2013 at 1:33 PM.
23 **Bates 1667 – 1668.**  This document shall be produced as it is part of the claims process.  Further,
24 it is clear that there is no attorney involvement in this email.

**Bates 1685 – 1688.**  This is the same document as contained in Bates 126 – 129 and shall be produced.

**Bates 1711 – 1724.**  This document shall be produced.  Because Mr. Leid performed quasi-fiduciary duties, this document containing legal advice related to coverage is discoverable. His mental impressions are directly at issue regarding Allstate's quasi-fiduciary duty to the Plaintiffs. This document is not covered by work product as the Court finds there was no impending litigation as of August 19, 2013.  In that regard, the Court rejects the suggestion from Allstate that litigation was impending as of May 13, 2013 simply through the fact that the Plaintiffs' public adjuster used the words "bad faith."  Further, the facts of this case support that conclusion as litigation was not commenced until eight months later.  Rather, the Court concludes based on the facts presented that Defendant know of impending litigation as of November 7, 2013 when Plaintiffs' counsel told Allstate that his clients were going to initiate litigation against Allstate.

**Bates 1731 -32; 1739, 1740, 1747,1748 – 17491753, 1756, 1757, 1758, 1759, 1772.**  These documents all relate to the claims process, many do not involve contact with an attorney and they are not covered by work product.  They shall be produced.

**Bates 1803 - 1814.**  This is the similar to document 924 – 937 and it shall be produced.

**Bates 1880, 2085 – 2088.**  These documents shall be produced.  While they do relate to retention of counsel, that was with regard to the claims process.  Further, there is nothing in these documents regarding litigation strategy or other legal issues as asserted.

**Bates 2101 – 2103.**  These documents are duplicates of Bates 1129 – 1132 and shall be produced.

**Bates 3861, 3896.**  These documents may be withheld.  They relate to a potential subrogation claim and are protected by work product.

//

DOCUMENTS REDACTED

**Bates 1223.**  The redacted portion shall be provided as retention of counsel related to the claims adjusting process.

**Bates 1290.**  The redacted portion shall be produced.  Allstate asserts the two entries regard attorney referral/assignment.  It is not clear, however, that the language of the entries do so relate.  In fact, there is very little information contained in these two entries.

**Bates 1301.**  This document shall be produced as it is with regard to the claims adjusting process.

**Bates 1302 - 1303.**  This document need not be produced in its complete form.  The redacted portion relates to the issue of subrogation and is protected by attorney-client and work product.

**Bates 1312 – 1313, 1317, 1318.**  These documents need not be produced in their complete form.  The redacted portions relate to the issue of subrogation and are protected by attorney-client and work product.

SUPPLEMENTAL PRIVILEGE LOG – DOCUMENTS WITHHELD

**Bates 4096.**  This is a duplicate of the bottom half of Bates 1740 and shall be produced.

**Bates 4098 – 4101.**  These documents relate to payment of a court reporter bill and do not contain legal opinions or elements of litigation strategy.  They shall be produced.

**Bates 4105.**  This document shall be produced as it is part of the claims adjusting process and is not covered by work product as there was no impending litigation.

**Bates 4106 – 4109.**  These documents all relate to the claims adjusting process and are not protected by work product as there was no impending litigation.  They shall be produced.

**Bates 4110 – 4124.**  These documents shall be produced.  They are all part of the claims adjusting process and not covered by work product doctrine as there was no impending litigation.


**Bates 4125 – 4127.** These documents shall be produced. They are all part of the claims adjusting process and not protected by work product as there was no impending litigation.

**Bates 4128.** This document contains a string of three emails with the first dated November 7, 2013 at 2:05 p.m. and the last dated November 12, 2013 at 5:51 p.m. This document may be withheld. It is covered under the work product doctrine as it was prepared with the knowledge of impending litigation.

**Bates 4129.** This document shall be produced. It is an email from Kendra Brown to Rory W. Leid, III dated November 7, 2013. It is not protected under either attorney client or work product.

**Bates 4130 – 4136.** These documents may be withheld. They range in date from December 10, 2013 through December 17, 2013 and are protected under both attorney client as well as work product as litigation was impending at the time these were prepared and these documents were "because of" the impending litigation.

**Bates 1437 – 4138.** The top portion of Bates 4137, which is an email between counsel and client and dated January 2, 2014 may be redacted. This is covered not only by attorney client but also work product as this was prepared "because of" the impending litigation. The balance of the document shall be produced as it is an email between Kasey Huebner and Rory Leid dated January 2, 2104.

**Bates 4139.** This document may be withheld. It is covered not only by attorney client but also work product as this was prepared "because of" the impending litigation.

**Bates 4140.** This document shall be produced. It contains an email from Kendra Brown, Legal Assistant, at Mills Meyers Swartling to Rory Leid dated January 14, 2014 and then the second email merely forwards to Ann Lewis the documents provided to Mr. Leid. This is not covered by the attorney client privilege or the work product doctrine.

**Bates 4141 – 4142.** The top portion of Bates 4141 which reflects an email dated January 15 between Rory Leid and Ann Lewis may be redacted as it is protected by attorney client and work product as it was prepared "because of" litigation. The balance of Bates 4141 and 4142 shall be produced as it is the same email from Kendra Brown referenced in Bates 4140.

**Bates 4143 – 4144.** The two emails appearing on Bates 4143 dated January 15, 2014 and January 17, 2014 may be redacted as they are protected by attorney client and work product as they were prepared "because of" litigation. The balance of Bates 4143 and 4144 shall be produced as it is the same email from Kendra Brown referenced in Bates 4140 – 4142.

**F.  Assertion of Civil Fraud**

If the Court finds that the attorney-client privilege exists, the "fraud exception is one of the exceptions that will pierce the privilege." *Cedell*, supra, at p. 697.  The *Cedell* approach requires the Court to first "determine whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred.  Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud.  The in camera inspection is a matter of trial discretion." *Cedell*, supra, at p. 698.

In light of the parties agreement, this Court conducted an *in camera* review of all the documents provided by Allstate.  Assuming, without deciding, that the Plaintiffs made a showing sufficient to meet the first step in *Cedell*, review of the documents does not lead this Court to conclude that there is a foundation in fact for the charge of civil fraud.

**G.  Order to File Under Seal**

The Defendant is Ordered to file, under seal, the documents that were provided to this Court for the *in camera* review so that the record is complete.  The documents so filed shall be in the same form as provided to the undersigned for the review.

1  DATED this 29th day of August, 2014.

2

3

4  Karen L. Strombom
   United States Magistrate Judge